**ERICKSON v. RICHARDSON.**

No. 7885.

Circuit Court of Appeals, Ninth Circuit.

Dec. 9, 1936.

Grainger & Hunt, of Los Angeles, Cal., for appellant.

Clock, McWhinney & Clock, of Long Beach, Cal., for appellee.

Before WILBUR, DENMAN, and HANEY, Circuit Judges.

DENMAN, Circuit Judge.

This appeal has been taken from an order of the bankruptcy court confirming an order of a referee allowing as a general claim against the bankrupt estate the claim for $260,200 presented by appellee.

It appears from the agreed statement that prior to January 21, 1935, appellee, as superintendent of banks of the state of California, took possession and charge of the assets of the Bank of San Pedro, an insolvent banking corporation, under authority of the statutes of California. At that time bankrupt owned 2,602 shares of the common capital stock of said bank which had a par value of $100 per share.

On January 21, 1935, the bankrupt filed his voluntary petition in bankruptcy, and was thereupon adjudicated bankrupt. Thereafter appellant was appointed trustee of the bankrupt estate. There is no evidence of any attempt of the appellant to decline to accept the statutory transfer of the bank stock, if that were possible. Cf. Gross v. Irving Trust Co., 289 U.S. 342, 344, 53 S.Ct. 605, 77 L.Ed. 1243, 90 A.L.R. 1215.

Act 652a, 1 General Laws, California, 1931, p. 314, provides:

"The stockholders of every banking corporation organized under the laws of the state of California shall be held individually liable, equally and ratably, and not one for another, for all contracts, debts and engagements of such corporation, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares." (Section 1.)

Section 2 of that act makes provision for the enforcement of such liability by the ap-

HANEY, Circuit Judge, dissenting.

pellee, by ordering a ratable assessment upon stockholders. This is not an assessment adding to the capital of the bank. The superintendent of banks collects it for the creditors, paying them therefrom. If the amount so collected exceeds the creditors' claims, the superintendent returns the balance to the stockholder.

About two months after the adjudication, appellee levied such an assessment, and filed a general claim against the bankrupt estate for the debtor's share, $260,200.

It will be noted that when the stockholder pays the assessment levied under the provisions of the act, he is improving the financial condition of the corporation of which he is a stockholder. If this assessment and the other assets of the bank repay the depositors, the bank is reopened and the stockholder continues his interest in the living corporation.

If the assessment moneys to pay the creditors of the corporation do not constitute a debt which may be filed in the bankruptcy proceeding, we have a situation where the bankrupt's interest in the stock of the bank has automatically been transferred to the trustee in bankruptcy (Gross v. Irving Trust Co., supra), while his discharge in bankruptcy does not free him from the obligation to pay the assessment.

The appellant objected to the filing of the claim of the superintendent of banks for the amount assessed against the bankrupt stock, claiming it was not a debt which could be filed in the bankruptcy proceeding because:

(1) The assessment made after the filing of the petition was too indefinite and remote a contingency to constitute a debt at the time of the filing of the petition; and

(2) If it were such a debt, it is "founded" *entirely* in the California statute and has none of the elements which would constitute it a debt "founded * * * upon a contract express or implied," as required by subdivision (4) of section 63a of the Bankruptcy Act, 11 U.S.C.A. § 103 (a) (4), defining debts which may be proved in bankruptcy proceedings. It is conceded that the liability here sought to be enforced is not within any other provision of section 63.

■ With regard to the first contention, it seems foreclosed by the decision of the Supreme Court in Maynard v. *Elliott*, 283 U.S. 273, 51 S.Ct. 390, 392, 75 L.Ed. 1028, in which the Supreme Court held, after a full review of the authorities, that the future and contingent liability of an indorser of commercial paper, executed before but maturing after the filing of the petition in bankruptcy, is a debt on an express contract, provable in a bankruptcy proceeding. It is none the less such a debt although its amount is indeterminate by reason of a possible future part payment by the maker of the paper of interest or interest and principal. The liability may be entirely extinguished by failure to take the necessary steps of presentation and dishonor. Maynard v. Elliott holds, citing many decisions, the indorser of paper not matured at the time of the bankruptcy to be standing on the "same plane as [makers of] contracts of suretyship or guarantee of payment of a debt not due until after the bankruptcy." In re Lyons Beet Sugar Refining Co. (D.C.) 192 F. 445, is cited with approval.

The contingencies of liability upon the assessment of the stock by the superintendent of banks are no more remote, uncertain, or unlikely than the nonpayment of commercial paper or the nonperformance of a guaranteed obligation.

■ Concerning the second objection by the appellant, that the assessment obligation arising from the provisions of the statute is not a "debt * * * upon a contract express or implied," the interpretation of the last phrase is subject to two canons of construction established by the Supreme Court. The one is stated in the case of Maynard v. Elliott, supra, 283 U.S. 273, 277, 51 S.Ct. 390, 392, 75 L.Ed. 1028, as follows:

"Possible doubts as to the meaning of the section should be resolved in the light of the purpose of the Act 'to convert the assets of the bankrupt into cash for distribution among creditors, and then to relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes.' Williams v. U. S. Fidelity Co., supra, 236 U.S. 549, 554, 35 S.Ct. 289, 290 [59 L.Ed. 713]."

■ The other canon is that the character of the debt is determined by the law of the state in which it is created. This court so holds in construing the National Bankruptcy Act itself, with reference to a claim against the stockholders of a California state bank.

"The court held the provision of the Constitution in question to be self-executing, and placed upon it the construction already indicated [i. e., the stockholder's liability was contractual]. That construction of the Constitution of the state by the highest court in existence under it is binding upon the federal courts. Flash v. Conn, 109 U.S. 371 [377], 3 S.Ct. 263, 27 L.Ed. 966." In re Brown (C.C.A.) 164 F. 673, 679; Bryant v. Swofford Bros. Dry Goods Co., 214 U.S. 279, 290, 29 S.Ct. 614, 53 L.Ed. 997; Freuler v. Helvering, 291 U.S. 35, 45, 54 S.Ct. 308, 312, 78 L.Ed. 634.

The first criterion, that the statute is to be interpreted "to relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes," would be violated by appellant's contention. Though yielding the stock to his creditors in bankruptcy, his discharge in bankruptcy would not enable him to start "afresh free" from his "business misfortunes." He would still carry the "weight of oppressive indebtedness," for an assessment which would enrich the bank in which he no longer had a stockholder's interest.

Applying the second criterion, namely, that the obligation of a stockholder for an assessment is or is not contractual in nature as determined by the law of the state of California, the appellant's position cannot be sustained.

This court, in 1908, in the case of Walker v. Woodside, 164 F. 680, 683, has determined the character of the stockholder's liability under California law, with reference to its character as a "debt" permitted to be filed under section 63 of the Federal Bankruptcy Act, 11 U.S.C.A. § 103, "founded * * * upon a contract express or implied."

The language of section 63 is unchanged. The Walker Case was decided on the same day as In re Brown, supra, holding the character of the stockholder's liability must be determined by the California law.

We held that under the Federal Bankruptcy Act, the liability of the stockholders of a state bank to its depositors constituted a provable claim under section 63 of the Bankruptcy Act (11 U.S.C.A. § 103) because it is founded in contract.

"The Constitution, as well as a statute of California, makes a stockholder in a corporation organized under its laws liable for his proportion of all of the debts of the corporation during the time he was such stockholder (section 3, art. 12, Const.; section 322, Civ.Code), which liability, in the case of banking corporations, arises at the time of the respective deposits. Wells, v. Black, 117 Cal. 157, 163, 48 P. 1090, 37 L. R.A. 619, 59 Am.St.Rep. 162. By section 359 of the Code of Civil Procedure of the state, it is provided that an action against a stockholder to recover his proportion of the debts of the corporation must be commenced within three years after the liability arises. The amended petition under consideration alleges that within two years then last past the six petitioning creditors had, respectively, deposited with the banking corporation of which the alleged bankrupt was a stockholder certain specific sums of money, for which the corporation was on November 26, 1907, and still is, *indebted,* and for his proportion of which, aggregating, according to the petition, $1,052.35, Walker then was, and still is, indebted. *That such a claim arises out of contract* was decided by the Supreme Court of the state in Kennedy v. California Savings Bank, 97 Cal. 93, 31 P. 846, 33 Am.St.Rep. 163, and Dennis v. Superior Court, 91 Cal. 548, 27 P. 1031. *They are, therefore, provable claims under the express terms of section 63 of the bankrupt act."* (Italics supplied.) Walker v. Woodside (C.C.A.) 164 F. 680, 683.

The Supreme Court of Oregon likewise holds the stockholder's liability provable in the federal bankruptcy proceeding. Dight v. Chapman, 44 Or. 265, 270, 75 P. 585, 65 L.R.A. 793. Other state cases have affirmed the proposition that national bank stockholders' liability is contractual. Duncan v. Freeman, 152 Ga. 332, 110 S.E. 5; Weitzel v. Brown, 224 Mass. 190, 112 N.E. 945, 946; Taylor v. Fontaine (Mo.App.) 10 S.W.(2d) 68, 72.

The obligation so held by us to be provable in bankruptcy is one provided by the California law concerning all stockholders. The Sixth Circuit has recently passed on the character of the liability of the stockholder in a national bank and in its holding of its contractual character states; that while the national bank stockholder's "obligation is fixed by statute. * * * When he subscribes for his stock he, *agrees to be* 'responsible for all contracts, debts, and engagements of such association, each to the amount of his stock therein, at the par value thereof, in addition to the amount

invested in such stock.' Upon the insolvency of the bank *he agrees* to discharge his obligation in such amounts and in such manner as shall be determined by the Comptroller. The statute admits of no exception and we can make none. Creditors and depositors have a right to expect that it will be observed and complied with as it is written." (Italics supplied.) Barbour v. Thomas (C.C.A.6) 86 F.(2d) 510, November 11, 1936.

The court then cites and relies upon its earlier decision in Deweese v. Smith (C.C.A.) 106 F. 438, 441, 66 L.R.A. 971, affirmed by the Supreme Court in Smith v. Brown, 187 U.S. 637, 23 S.Ct. 845, 47 L.Ed. 344. The Supreme Court sustains the decision of the Eighth Circuit, in which the latter court held:

"*The liability of a shareholder of a national bank is contractual.* It rests on his subscription for or his receipt and acceptance of his stock. By that act he agrees to be a shareholder of the bank, and to assume and discharge all the legal obligations and duties of such a shareholder. First Nat. Bank v. Hawkins, 174 U.S. [364] 365, 370, 19 S.Ct. 739, 43 L. Ed. 1007. Upon familiar principles the acts of congress and the settled rules of law to which reference has now been made are necessarily read into and become a part of every stockholder's contract. The agreement of the shareholder with the bank and its creditors thus becomes a contract that, to an amount not exceeding the par value of his shares of stock, and not exceeding his equal and ratable proportion, he will pay, at such times and in such amounts as the comptroller of the currency shall decide to be necessary and shall demand, the debts and obligations of his bank." (Italics supplied.) Deweese v. Smith (C.C.A.) 106 F. 438, 441.

Earlier in the year the Fourth Circuit similarly finds the liability of the national bank stockholder to be contractual.

"As the subscription was a joint subscription and the stock was held in trust for the subscribers jointly, the liability for stock assessment was also joint, being 'contractual,' and arising from the 'subscription to the stock.' Matteson v. Dent, 176 U.S. 521, 525, 20 S.Ct. 419, 421, 44 L.Ed. 571; Richmond v. Irons, 121 U.S. 27, 55, 7 S. Ct. 788, 30 L.Ed. 864." Chisholm v. Gilmer (C.C.A.) 81 F.(2d) 120, 125.

The courts of Massachusetts and New York have considered the stockholder's liability as created by the language of the National Banking Act to be provable debts under the Federal Bankruptcy Act (11 U. S.C.A.). Cunningham v. Commissioner, 249 Mass. 401, 144 N.E. 447; Van Tuyl v. Schwab, 174 App.Div. 665, 161 N.Y.S. 323, 325, affirmed 220 N.Y. 661, 116 N.E. 1081.

In the case of Coombes v. Getz, 285 U. S. 434, 52 S.Ct. 435, 76 L.Ed. 866, the Supreme Court held that in California the liability to creditors of the corporation for moneys lost to them by misappropriation of directors or. officers, which liability the Constitution placed upon one becoming a director, was contractual in its nature. Hence, although the State Constitution reserved the right to alter the corporate articles, nevertheless, where the director was indebted to a creditor of the corporation, a constitutional amendment made thereafter could not deprive the creditor of his contract obligation against the director. Such an effect of the repeal would violate the Federal Constitution, art. 1, § 10, by impairing a contractual obligation. The California cases are reviewed in that recent decision. The United States Supreme Court holds (285 U.S. 434, at page 442, 52 S.Ct. 435, 436, 76 L.Ed. 866):

"The right of this petitioner to enforce respondent's liability had become fully perfected and vested prior to the repeal of the liability provision. His cause of action was not *purely* [italics in opinion] statutory. It did not arise upon the constitutional rule of law, *but upon the contractual liability created in pursuance of the rule.* Although the latter derived its being from the former, it immediately acquired an independent existence competent to survive the destruction of the provision which gave it birth. The repeal put an end to the rule for the future, but it did not and could not destroy or impair the previously vested right of the creditor (which in every sense was a property right, Ettor v. Tacoma, 228 U.S. 148, 156, 33 S.Ct. 428, 57 L.Ed. 773; Pritchard v. Norton, 106 U.S. 124, 132, 1 S.Ct. 102, 27 L.Ed. 104) to *enforce his cause of action upon the contract.* Ettor v. Tacoma, supra; Hawthorne v. Calef, 2 Wall. 10, 22, 17 L.Ed. 776; Pacific Mail Steamship Co. v. Joliffe, 2 Wall. 450, 17 L.Ed 805; Ochiltree v. Railroad Co., 21 Wall. 249, 252, 253, 22 L. Ed. 546; Harrison v. Remington Paper Co. (C.C.A.) 140 F. 385, 390 et seq., 3 L.R.A. (N.S.) 954, 5 Ann.Cas. 314; Knickerbocker Trust Co. v. Myers (C.C.) 133 F. 764, 767." (Italics supplied.)

In Harrison v. Remington Paper Co., 140 Fed. 385, on page 390, 3 L.R.A.(N.S.) 954, 5 Ann.Cas. 314, cited to in support of the holding in the Coombes Case, the Circuit Court of Appeals for the Eighth Circuit holds:

"*By his subscription* for the stock, or by his receipt and acceptance of it, *he solemnly agrees,* in consideration of the benefits derived from its ownership, that he will faithfully perform the obligations and discharge the duties imposed upon a stockholder by the Constitution, the statutes, and the law. When the defendant in this case took his stock, therefore, *he made a contract* with the Topeka Company and its creditors under the Constitution of Kansas and sections 1200 and 1204, which were then in force, that whenever that corporation suspended business for more than one year he would pay the debts of the corporation which were then existing to an amount not exceeding the par value of his stock. First Nat. Bank v. Hawkins, 174 U.S. [364] 365, 370, 19 S.Ct. 739, 43 L.Ed. 1007; Deweese v. Smith, 45 C.C.A. 408, 411, 106 F. 438, 441 [66 L.R.A. 971]; Whitman v. National Bank, 176 U.S. 559, 20 S.Ct. 477, 44 L.Ed. 587; Anglo-American Land, M. & A. Co. v. Lombard (C.C.A.) 132 F. 721, 729." (Italics supplied.)

The decision of Coombes v. Getz, supra, regarding the contractual character of the California stockholder's liability is the more pertinent, since a vigorous dissent, pressing on the majority certain language in Christopher v. Norvell, 201 U.S. 216, 26 S.Ct. 502, 50 L.Ed. 732, 5 Ann.Cas. 740, concerning the statutory origin of the stockholder's obligation, is met with the citation of the Harrison and Joliffe Cases.

The California Supreme Court has recently held in Kaysser v. McNaughton, 57 P.(2d) 927, that, where one becomes a stockholder in a California corporation and is liable to its creditors under the following provision of the California Constitution of 1879 (§ 3, art. 12), "Each stockholder of a corporation, or joint-stock association, shall be individually and personally liable for such proportion of all its debts and liabilities contracted or incurred, during the time he was a stockholder, as the amount of stock or shares owned by him bears to the whole of the subscribed capital stock or shares of the corporation or association," the *"relationship* between creditor and stockholder * * * was *contractual."* (Italics supplied.)

The Kaysser Case relies upon Aronson & Co. v. Pearson, 199 Cal. 286, 249 P. 188, 190, 51 A.L.R. 1380. There that court determines the contractual nature of the stockholder's liability in an extended discussion of its incidents. Quoting from prior opinions of that court it says: "That the statutory liability of a stockholder in a corporation to pay his proportion of a debt due from the corporation itself is a contract within the meaning of the law which limits the right of attachment to actions upon a contract." It then goes on to say:

"The principle upon which a stockholder becomes liable for corporate debts is analogous to that which binds the writer of a general letter of credit which contemplates 'a course of future dealing,' as provided by section 2864 of the Civil Code. When such a letter of credit is accepted by giving credit in compliance with its terms, 'there springs from the letter and its acceptance *a distinct contract * * ** which is binding upon the writer of the letter. And this writer is upon the default of the debtor liable to those who gave credit in accordance with its terms.' Lafargue v. Harrison, 70 Cal. 380, 384, 9 P. 259, 261, [11 P. 636] 59 Am.Rep. 416. In an action against the writer of a letter of credit, it is necessary to *prove a contract* between the person in whose favor the letter is drawn and the one who gave the credit to him, but the suit is not upon such contract, on the theory that such person secured the credit as the agent of the writer of the letter, but upon the letter itself and its acceptance, which constitute *the contract* between the writer and the person who gave the credit.

"While all the rules relating to the liability of a guarantor are not applicable to a stockholder's liability, *the obligation of the latter* is in the nature of *a continuing guaranty* of payment of debts contracted by the corporation during his ownership of stock and to the extent provided by the Constitution. The liability of a guarantor is distinct and independent of that of the principal debtor."

" 'It is held in Kennedy v. California Sav. Bank, 97 Cal. 93, 96, 31 P. 846, 847, 33 Am. St.Rep. 163 * * * that the *corporation acts* as the *agent of its stockholders* in the making of *contracts* and *creating the liability* by which they are bound, and that an action against a stockholder for such liability is *essentially an action founded upon the contract.' "* (Italics supplied.) Aron-

son & Co. v. Pearson, 199 Cal. 286, 291, 288, 249 P. 188, 51 A.L.R. 1380.

We thus see in 1936 in the Kaysser Case the reaffirmation, in language almost identical with that of the Bankruptcy Act, of the character of the stockholder's debt as held in 1892 in the Kennedy Case. It is a liability "founded upon the contract."

The analogy is complete between the constitutional provision creating the contractual liability of the stockholder to the corporation's creditors and the provision of the statute creating the stockholder's liability for the debts of a banking corporation. Under the state constitutional provision the corporation is the agent of the stockholder for the making of the debts which the stockholder is contractually bound to pay. Under the state banking act, the insolvency of the bank places the superintendent of banks in the position of agent of the depositors and other creditors of the bank for the collection from the stockholders of the debt he has contracted to pay such creditors. The debt contracted by the corporation as agent of the stockholder and collected by a superintendent of banks as agent of the creditors of the bank is the same debt, i. e., a contract debt.

It is true that the money to pay the depositors and other creditors, collected by the assessment, may exceed the debts to them. In this event the surplus is to be returned to the stockholder. It is not like an ordinary assessment of a corporation which simply adds to its fixed or working capital. However, even if it were such an ordinary assessment, the power to assess arises from the contract made by the stockholder when he subscribed for the stock. See Burke v. Maze, 10 Cal.App. 206, 207, 101 P. 438, 440.

In an assessment to add to the permanent or working capital, the contract would be between the stockholder and the bank itself. While the form of the contract is prescribed by the statute, the making of the contract between the subscribing stockholder and the company creates a contract liability and not one purely statutory in character.

Under the law of the state of California, a liability arising from the incidents of a status created by the statute is held to be a liability in quasi contract. By the terms of a California pilotage statute, the San Francisco Bar Pilots speaking a registered vessel and having their services declined, were entitled to a statutory fee based upon the tonnage of the ship. The question arose whether the repeal of this statute after the tender of the service by the pilot extinguished the obligation of the vessel, or whether the liability for the pilotage was founded in contract and could not be extinguished by repeal of the statute.

It was contended that the obligation was purely statutory, having nothing contractual in its nature whatsoever, and hence the extinguishment by the repeal would not amount to impairment of an obligation of contract. The Supreme Court of the United States in the case of Pacific Mail Steamship Co. v. Joliffe, 2 Wall. 450, 17 L.Ed. 805, held that, since under the law of that state the obligation to pay the pilotage fee was one in quasi contract, it was contractual in nature and hence was independent of statute and could not be extinguished by the repeal of the statute.

"The claim of the plaintiff below for half-pilotage fees, resting upon a transaction regarded by the law as a quasi contract, there is no just ground for the position that it fell with the repeal of the statute under which the transaction was had. *When a right has arisen upon a contract, or a transaction in the nature of a contract authorized by statute,* and has been so far perfected that nothing remains to be done by the party asserting it, the repeal of the statute does not affect it, or an action for its enforcement. It has become a vested right which stands independent of the statute. And such is the position of the claim of the plaintiff below in the present action: the pilotage services had been tendered by him; his claim to the compensation prescribed by the statute was then perfect, and the liability of the master or owner of the vessel had become fixed." Pacific Mail Steamship Co. v. Joliffe, 2 Wall. 450, 455, 17 L.Ed. 805.

The Supreme Court holds that quasi contractual obligations are within section 63 of the Bankruptcy Act, 11 U.S.C.A. § 103, as obligations founded upon contract. That is to say, that a claim originally "founded" in tort or other wrongful act, but giving rise to an implied assumpsit, is nevertheless "founded * * * upon a contract * * * implied" within section 63 of the Bankruptcy Act.

In Davis v. Ætna Acceptance Co., 293 U.S. 328, 331, 55 S.Ct. 151, 79 L.Ed. 393, an action for conversion of an automobile was held provable in bankruptcy inasmuch as

the injured party might "waive the tort" and sue "in assumpsit."

The Davis Case relies on Crawford v. Burke, 195 U.S. 176, 187, 25 S.Ct. 9, 49 L.Ed. 147, where a broker had received a discharge in bankruptcy. Later he was sued in trover for the conversion of plaintiff's stock. The court held the discharge to be a bar, inasmuch as plaintiff might have waived the tort and sued in implied assumpsit.

This was reaffirmed in Tindle v. Birkett, 205 U.S. 183, 185, 27 S.Ct. 493, 51 L.Ed. 762; Friend v. Talcott, 228 U.S. 27, 37, 38, 33 S.Ct. 505, 57 L.Ed. 718, both cases considering section 63 of the act.

In Clarke v. Rogers, 228 U.S. 534, 547, 33 S.Ct. 587, 591, 57 L.Ed. 953, this principle was applied to a claim against a trustee who had misappropriated funds of the trust. The court said, "From the misuse of the funds the law would imply an obligation to repay," and held that the claim was provable in bankruptcy.

In Schall v. Camors, 251 U.S. 239, 251, 40 S.Ct. 135, 137, 64 L.Ed. 247, it was held that an unliquidated demand founded on mere tort is not provable, but if the tort resulted in unjust enrichment so that an action "quasi ex contractu" could be brought, then the claim was provable. That is to say, although a claim was originally not founded in contract, nevertheless it may be deemed founded in an implied contract within section 63 if it gave rise to a form of action, in quasi contract.

Against the conclusion above reached in the Fourth, Eighth, and Ninth Circuits as to the contractual liability of the national bank stockholder and the Supreme Court decision in Coombes v. Getz, supra, and the California cases, three Supreme Court cases are urged to the contrary. McClaine v. Rankin, 197 U.S. 154, 161, 162, 25 S.Ct. 410, 413, 49 L.Ed. 702, 3 Ann.Cas. 500; Christopher v. Norvell, 201 U.S. 216, 26 S.Ct. 502, 50 L. Ed. 732, 5 Ann.Cas. 740; and Forrest v. Jack, 294 U.S. 158, 55 S.Ct. 370, 79 L.Ed. 829, 96 A.L.R. 1457.

None of them construes the National Bankruptcy Act as does our opinion in Walker v. Woodside, supra. Hence none is construing the nature of the national bank stockholder's liability under the canon of liberal interpretation required by the Supreme Court in Maynard v. Elliott, supra. The first two preceded the series of cases from Tindle v. Birkett, supra, to Davis v. Ætna Acceptance Co., supra, cited to the

proposition that a claim "founded" in tort may be also "founded * * * upon a contract * * * implied" or maintainable in a form of action in quasi contract.

Nevertheless it is urged that these cases decide that the words of the Bankruptcy Act permitting the filing of a debt "founded * * * upon a contract express or implied" must be narrowly construed to mean that no stockholder's debt can be "founded" upon an express or implied contract, where the form of the obligation of the contract is prescribed by such a statute as the California banking act. Such an obligation *must* be construed as "founded" on the *statute* and nothing else. In this narrow interpretation the contractual acts of the bankrupt stockholder cannot be regarded as the foundation of his liability.

It is further urged that, since these federal cases so narrow the construction of the stockholder's liability under the National Banking Act, the state of California, in using almost identical terms in its state banking act, intended that in the latter's interpretation the historic development of the stockholder's *contractual* liability in its Supreme Court decisions should be disregarded and the claimed narrow federal construction should control.

If the fiction of the legislative intent to adopt the construction of the federal courts with reference to stockholder's liability were to be accepted, it could be urged that the California banking law should be interpreted with a view to our decision in Walker v. Woodside, supra, that the claims against bank stockholders were "debts" "founded upon a contract" as that term is used in the Bankruptcy Act. However, this is unnecessary, since an analysis of these cases shows that the claimed limiting interpretation of the phrase "founded upon a contract" *as used in the bankruptcy act*, is not sustained.

In McClaine v. Rankin, the question before the court was whether or not a suit upon this national bank stockholder's liability to the bank's creditors was within the meaning of a Washington state statute of limitations, "An action upon a contract or liability, express or implied, which is not in writing, and does not arise out of any written instrument," or "an action for relief, not hereinbefore provided for." If an action upon the national bank stockholder's liability fell within the first classification, the statute provided a three-year limitation. If it fell within the second classification,

the action had to be commenced within two years after the cause of action had accrued. The majority opinion states the problem as follows (197 U.S. 154, at page 159, 25 S.Ct. 410, 411, 49 L.Ed. 702, 3 Ann.Cas. 500):

"Conceding that a statutory liability may be contractual in its nature, or more accurately, *quasi-contractual,* does it follow that an action given by statute should be regarded as brought on *simple contract,* or for breach of a *simple contract,* and, therefore, as coming within the provision in *question?*" (Italics supplied.)

In so stating the question, the court is making a classification between "simple contracts" and quasi contracts, or contracts provided by statute but created by subsequent acts of the obligor, the framework of whose obligation is determined by the statute.

Without deciding whether the national bank act created a quasi contractual obligation upon the stockholder to pay an indebtedness to the bank's creditors, the court holds that the words of section 5151 of the Revised Statutes (see 12 U.S.C.A. § 63), defining this stockholder's liability (197 U. S. 154, at page 161, 25 S.Ct. 410, 412, 49 L.Ed. 702, 3 Ann.Cas. 500), "do not mean that the stockholder promises the creditor, as surety for the debts of the corporation, but merely impose a liability on him as secondary to those debts, which debts remain distinct, and to which the stockholder is not a party. The liability is a consequence of the breach by the corporation of its contract to pay, and is collateral and statutory."

It then holds that the statute of limitations "ran as against an action to enforce the statutory liability and not an action for breach of contract." There was a strong dissent by three of the justices.

The McClaine Case cites with approval Platt v. Wilmot, 193 U.S. 602, 24 S.Ct. 542, 48 L.Ed. 809. That case determined whether a state bank stockholder's liability fell within a general provision of the statute of limitations providing a six-year period for actions upon a contract "express or implied," or a specific section applying to stockholders, as follows:

"Sec. 394. This chapter does not affect an action against a director or stockholder of a moneyed corporation, or banking association, to recover a penalty or forfeiture imposed, or to enforce a liability created by the common law or by statute; but such an action must be brought within three years after the cause of action has accrued." Platt v. Wilmot, supra, 193 U.S. 602, 607, 24 S.Ct. 542, 543, 48 L.Ed. 809.

The court, in deciding that the latter provision was applicable, describes the contractual character of the stockholder's liability as follows:

"We think, within the meaning of § 394, this liability was created by statute, as it was by virtue of the statutes that the contractual liability arose. The language of the section plainly includes this case. It is a liability created by the statute, because the statute is the foundation for the implied contract arising from the purchase of, or subscription for, the stock, the contract being that the holder of the stock shall be liable in accordance with the terms of the statute.

"Also, *while the liability is contractual in its nature,* it arises out of the Constitution or the statute, or from a combination of both, by virtue of the application of general principles of law to the facts in the case. Neither the Constitution nor the statute says that the liability is contractual, but, as the Constitution and statute existed, the liability arising therefrom, as against the stockholder, is because of the principle of law which works out a *contractual* liability upon these facts, and it may be fitly described as the common law." Platt v. Wilmot, supra, 193 U.S. 602, 613, 24 S.Ct. 542, 546, 48 L.Ed. 809.

We cannot agree with appellant that the phrase "contract express or implied" as used in the Bankruptcy Act should be interpreted, by reason of the McClaine Case, as within the narrow area prescribed by the Washington statute imposing limitations—that is narrowing the compass of the phrase to "simple contracts" as distinguished from all other obligations having a contractual nature.

The criterion of Maynard v. Elliott, supra, requires the broader interpretation. If the obligation of the stockholder under the California banking act were to be regarded as both statutory in its origin, and creating a mere quasi contractual obligation on the part of the stockholder, and not an actual contract as held by the California Supreme Court, this criterion of interpretation would permit the filing of the bank's creditors claims in the bankruptcy proceeding as such a quasi contractual obligation.

Donald v. Bird (C.C.A.9) 85 F.(2d) 663, 664, recently decided by this court, is

distinguishable on the same ground. There the question was whether the national bank stockholder's liability was to be classified under the provision of an Arizona statute of limitation as a "debt where the indebtedness is not evidenced by a contract in writing" or as a "liability created by statute, other than a penalty of forfeiture." No such distinction between a strict contract and an "implied" or quasi contractual liability arising out of a statute appears in the Bankruptcy Act. The situation might be otherwise, if the latter act had provided for a "liability created by statute" as well as for a debt "founded upon a contract express or implied." Even then it could well be argued that under Maynard v. Elliott the stockholder's liability falls within the former category.

In Christopher v. Norvell, 201 U.S. 216, 26 S.Ct. 502, 50 L.Ed. 732, 5 Ann.Cas. 740 (the case cited in the dissent in Coombes v. Getz, supra, to disprove the majority contention that the California stockholder's liability was not contractual), the question was whether a married woman in Florida was liable for an assessment as shareholder in a national bank to the creditors of the bank, the law of that state forbidding her to make binding contracts. The court held that while there may be contractual features in this liability of a stockholder in a national bank, she was at any rate liable because the liability had been created by statute. The language of the court is as follows (201 U.S. 216, at page 228, 26 S.Ct. 502, 506, 50 L.Ed. 732, 5 Ann.Cas. 740):

"Her liability for the debts of the bank is created by the statute, *although in a limited sense there is an element of contract in her having become a shareholder;* and the right of the receiver to maintain this action depends upon, and has its sanction in, the statute creating liability against each shareholder, in whatever way he may have become such. There have been *cases in which there appeared such elements of contract as were deemed sufficient, in particular circumstances, to support an action.* Concord First Nat. Bank v. Hawkins, 174 U.S. 364, 372, 19 S.Ct. 739, 43 L.Ed. 1007, 1011; Whitman v. Oxford Nat. Bank, 176 U.S. 559, 565, 566, 20 S.Ct. 477, 44 L.Ed. 587, 591, 592; Matteson v. Dent, 176 U.S. 521, 20 S.Ct. 419, 44 L.Ed. 571. But that fact does not justify the contention that an action upon an assessment made by the Comptroller is not based upon the statute." (Italics supplied.)

The italicization by the court itself in the following quotation emphasizes the existence of a contractual character of a relationship between the stockholder and the bank creditor, even though a suit may be maintained on the basis of a statutory liability (201 U.S. 216, at page 225, 26 S.Ct. 502, 504, 50 L.Ed. 732, 5 Ann.Cas. 740):

"The vice in this argument is in the assumption that the liability of Mrs. Christopher as a shareholder arises *wholly* out of *contract* between herself and the bank or its creditors; whereas, upon becoming a shareholder, she made, strictly, no direct *contract with* anyone, and became, as was held in Keyser v. Hitz [133 U.S. 138, 10 S.Ct. 290, 33 L.Ed. 531], supra, *by force of the statute* individually responsible to the amount of her stock, for the contracts, debts, and engagements of the bank equally and ratably with other shareholders." (Italics in opinion.)

In the case of Forrest v. Jack, 294 U.S. 158, 55 S.Ct. 370, 79 L.Ed. 829, 96 A.L.R. 1457, no question is raised whether the nature of the stockholder's liability is contractual or statutory, or both. Certainly it cannot be regarded as overruling Davis v. Ætna Acceptance Co., supra, interpreting section 63 of the Bankruptcy Act (11 U.S.C.A. § 103), decided in the previous term of the court.

In a dictum reviewing the incidents in the character of the liability of the stockholder, the court says, "the liability of stockholders is based upon the statute, section 64." 12 U.S.C.A. § 64. Explaining the dictum it cites the Rankin Case, with its suggestion that the obligation of the stockholder is quasi contractual in character; Christopher v. Norvell, in which the suggestion is that the liability has a contractual character, although created by statute; and McDonald v. Thompson, 184 U.S. 71, which the Forrest Case cites to the following language appearing on pages 73 and 74, 22 S.Ct. 297, on page 298, 46 L. Ed. 437:

"Granting *there was a contract* with the creditors to pay a sum equal to the value of the stock taken, in addition to the sum invested in the shares, *this was a contract created by the statute,* and obligatory upon the stockholders by reason of the statute existing at the time of their subscription; but it was not a contract in writing within the meaning of the Nebraska act, since the writing—that is, the subscription—contained no reference whatever to the statu-

tory obligation and no promise to respond beyond the amount of the subscription.

"In none of the numerous cases upon the subject in this court is this obligation treated as an express contract, *but as one created by the statute and implied from the express contract of the stockholders to take and pay for shares in the association.* Carrol v. Green, 92 U.S. 509, 512, 23 L.Ed. 738, 739; Terry v. Little, 101 U.S. 216, 25 L. Ed. 864; Concord First National Bank v. Hawkins, 174 U.S. 364, 19 S.Ct. 739, 43 L. Ed. 1007; Matteson v. Dent, 176 U.S. 521, 20 S.Ct. 419, 44 L.Ed. 571; Whitman v. Oxford National Bank, 176 U.S. 559, 20 S.Ct. 477, 44 L.Ed. 587. * * *

"Whether the promise raised by the statute was an implied contract not in writing or a liability created by statute, it is immaterial to inquire. For the purposes of this case it may have been both. The statute was the origin both of the right and the remedy, *but the contract was the origin of the personal responsibility of the defendant."* (Italics supplied.)

No one has ever questioned that the statute was the origin of both the right and the remedy. It is the character of the right which must be determined and if contract is necessary for the further origin of the personal liability of the defendant, the contractual character of the obligation is established. Here again we are acting under the rule of interpretation of the Bankruptcy Act requiring us to free the debtor as far as possible from the burdens of his business misfortunes.

McDonald v. Thompson, on the page cited in the Forrest Case, cites Concord First National Bank v. Hawkins, 174 U.S. 364, at page 372, 19 S.Ct. 739, 742, 43 L.Ed. 1007, in which appears the following language:

"In the present case it is sought to escape the force of these decisions by the contention that the liability of the stockholder in a national bank to respond to an assessment in case of insolvency *is not contractual, but statutory.*

"Undoubtedly the obligation is declared by the statute to attach to the ownership of the stock, and in that sense may be said to be statutory. *But as the ownership of the stock, in most cases, arises from the voluntary act of the stockholder, he must be regarded as having agreed or contracted to be subject to the obligation."* (Italics supplied.)

While the transfer of all the debtor's assets to the trustee is involuntary, the trustee merely steps into the shoes of the bankrupt, and takes the stock without changing the character of the obligation of the debtor stockholder.

There is nothing in Forrest v. Jack overruling Coombes v. Getz. Nor is there anything in any of these federal cases which constrains the state of California to refuse to interpret the stockholder liability provisions of its banking act in accord with its interpretation of a California stockholder's liability. There is no rejection of any interpretation by the federal courts of the prior similar federal act, in construing it in accord with the historic development of the character of the California stockholder liability established in a long succession of opinions by its Supreme Court.

In Brown v. O'Keefe (C.C.A. 3) 85 F. (2d) 885, decided September 24, 1936, a shareholder of a national bank received a discharge in bankruptcy. The court held, rightly or wrongly, that his bank stock had never passed to the trustee in bankruptcy. Cf. Gross v. Irving Trust Co., 289 U.S. 342, 344, 53 S.Ct. 605, 606, 77 L.Ed. 1243, 90 A.L.R. 1215. Subsequent to his discharge an assessment was made against his share. The court held that the discharge in bankruptcy did not prevent future assessments upon shares which had never passed to the trustee in bankruptcy. The case is manifestly different from the one before us. It is true that there are expressions of opinion in that decision which appear contrary to the views expressed herein. For reasons sufficiently appearing in the above discussion, we cannot agree with that opinion, whether it be dictum or decision. It is contrary to the more recent holding of the Sixth Circuit in Barbour v. Thomas, supra, and to that of the Fourth Circuit in Chisholm v. Gilmer, supra, and fails to consider any of the federal authorities on which this opinion is based.

We, therefore, hold that the obligation of the stockholder of this insolvent bank to pay to the superintendent of banks the moneys to discharge the bank's creditors is a debt "founded upon a contract" as that term is used in the bankruptcy statute. The District Court's order confirming the allowance by the referee in bankruptcy of the claim presented by the appellee superintendent of banks is affirmed.

Affirmed.

HANEY, Circuit Judge.

I dissent.

The Bankruptcy Act, § 63 (11 U.S.C.A. § 103), provides that: "Debts of the bankrupt may be proved and allowed against his estate which are * * * founded upon * * * a contract express or implied." The statute does not say how much of the foundation of the debt must be contractual. It seems to me that there could be only three possible theories with respect to that question.

First. One possible theory is that when the statute says a debt must be "founded upon a contract," it means that the debt must be "wholly" or "entirely" founded upon a contract. If that construction is correct, it is clear that the claim before us is not provable. McClaine v. Rankin, 197 U.S. 154, 25 S.Ct. 410, 49 L.Ed. 702, 3 Ann.Cas. 500; Christopher v. Norvell, 201 U.S. 216, 225, 228, 26 S.Ct. 502, 50 L.Ed. 732, 5 Ann.Cas. 740.

Second. Another possible theory is that if any part of the foundation of the debt is contractual in its nature, the claim is provable.

Some of the early decisions of the Supreme Court contain expressions indicating that the liability of a stockholder in a national bank is contractual in its nature. Richmond v. Irons, 121 U.S. 27, 55, 7 S.Ct. 788, 30 L.Ed. 864; Matteson v. Dent, 176 U.S. 521, 525, 20 S.Ct. 419, 44 L.Ed. 571. Neither these cases nor the other cases decided by the Supreme Court say that the liability is "founded upon contract," but do say that the liability is contractual in its nature.

Other cases indicate that the liability is one founded on both the statute and contract. U. S. v. Knox, 102 U.S. 422, 424, 26 L.Ed. 216; Stuart v. Hayden, 169 U.S. 1, 8, 18 S. Ct. 274, 42 L.Ed. 639; Concord First National Bank v. Hawkins, 174 U.S. 364, 372, 19 S.Ct. 739, 43 L.Ed. 1007; McDonald v. Thompson, 184 U.S. 71, 73, 22 S.Ct. 297, 46 L.Ed. 437.

Still other cases indicate that the liability is "based" on the statute. Keyser v. Hitz, 133 U.S. 138, 149, 10 S.Ct. 290, 33 L. Ed. 531; Scott v. Deweese, 181 U.S. 202, 213, 21 S.Ct. 585, 45 L.Ed. 822; Studebaker v. Perry, 184 U.S. 258, 261, 22 S.Ct. 463, 46 L.Ed. 528.

In McClaine v. Rankin, supra, 197 U.S. 154, 161, 25 S.Ct. 410, 413, 49 L.Ed. 702, 3 Ann.Cas. 500, it was held that a state statute limiting the time within which "an action

upon a contract or liability, express or implied, which is not in writing, and does not arise out of any written instrument" was not applicable, but that a statute of limitations providing that "an action for relief, not hereinbefore provided for, shall be commenced within two years after the cause of action shall have accrued" was applicable in an action to recover the liability of a bank's stockholder. To properly understand this case I refer to the decisions prior to the one handed down by the Supreme Court. The question arose on demurrer, before the circuit court. That court arrived at the result which was later reached by the Supreme Court, saying:

"Furthermore, it seems to me that there is no contract, express or implied, or voluntary assumption of a liability on the part of the defendant, to pay this assessment. A contract must have parties. Two or more minds must meet so as to form an agreement. A promise to bind the promisor must be made to a promisee. A promise made to everybody lacks the element of mutuality essential to give it force as a binding obligation. Therefore I consider that the liability of a shareholder of a national bank to pay an amount equal to the par of his shares of stock is not contractual, but is a conditional liability imposed by the law as an incident to ownership of bank stock. The right of creditors of an insolvent national bank to have the liability enforced for their benefit does not rest upon any actual or constructive promise made to them by any or all of the shareholders to assume liability. At the time of becoming creditors they may not, and usually do not, know who owns the stock; and yet they are entitled to have the liability enforced, if the assets and resources of the bank are not sufficient to meet their demands, *because the liability arises by force of the statute, and is not contractual.*" (Italics supplied.) Aldrich v. McClaine (C. C.) 98 F. 378, 379.

Upon appeal to this court, the court below was reversed and it was held "that the liability of the defendant in error as a stockholder of a national bank must be held to be not only statutory, but contractual as well." Id. (C.C.A.) 106 F. 791, 794.

That was the situation when the case came before the Supreme Court. By the latter's decision, the decision of this court was reversed, and the decision of the circuit court was upheld, the court saying, 197 U.S. 154, at page 161, 25 S.Ct. 410, 412, 49 L.Ed. 702, 3 Ann.Cas. 500, that: "The liability is a

consequence of the breach by the corporation of its contract to pay, and is collateral and statutory." It is interesting to note that the writer of the dissenting opinion flatly recognizes that the prior cases holding the liability to be contractual were overruled by the majority opinion, for he states: "To me it seems that this interpretation, whilst overruling the previous cases also originally considered, gives to the national banking act an erroneous construction."

Following this decision, it was said in Christopher v. Norvell, supra, 201 U.S. 216, 225, 26 S.Ct. 502, 50 L.Ed. 732, 5 Ann.Cas. 740, that the liability was "created by the statute." The latest expression of the Supreme Court is found in Forrest v. Jack, 294 U.S. 158, 162, 55 S.Ct. 370, 371, 79 L. Ed. 829, 96 A.L.R. 1457, where it is said: "The liability of stockholders is based upon the statute, 12 U.S.C.A. § 64."

Therefore, I believe that if the provision of the Bankruptcy Act is construed to mean that a claim is provable if any part of the foundation of the debt is contractual, then the early decisions stating that the liability is contractual, must be considered as overruled by McClaine v. Rankin, supra, Christopher v. Norvell, supra, and Forrest v. Jack, supra. The Sixth Circuit seems to entertain this view, for in Laurent v. Anderson (C.C.A.) 70 F.(2d) 819, 823, it is said: "The stockholder's double liability is *not contractual,* but is imposed by statute as an incident of ownership." The Eighth Circuit seems to entertain the same view, for in Page v. Jones (C.C.A.) 7 F.(2d) 541, 544, it is said: "The double liability of a shareholder of a national bank under section 9689 [12 U.S.C.A. § 64] for the payment of its debt is *entirely statutory.*"

The text-writers seem to be in accord with this view. In Magee on Banks and Banking (3d Ed.) 87, § 68, it is said: "A stockholder's liability arises and exists by force of the statute and is not contractual." In 7 Michie on Banks and Banking 56, § 73, it is said: "The liability of a stockholder of a national bank to assessment on the bank's insolvency is one created by statute. * * * Furthermore, individual liability of a stockholder is contractual in its nature although there is no direct contract with any one, and it arises by force of the statute. * * *" In 2 Morse on Banks and Banking (6th Ed.) 1401, § 675, it is said: "The liability of a shareholder in a national bank to an assessment on his shares is not a contractual liability, but arises by

force of the statute authorizing the assessment." And in 7 C.J. 769, § 606, it is said: "This liability * * * is held to arise purely by force of the statute, and not to be contractual in its nature."

This court has apparently adopted this view, for in Drain v. Stough, 61 F.(2d) 668, 669, 87 A.L.R. 490, it is said: "The obligation to the bank's creditors, although arising out of an implied contract of the decedent stockholder, is a statutory obligation." And in the recent case of Donald v. Bird, 85 F.(2d) 663, 664, this court said, speaking of actions to recover the liability of a stockholder in a national bank: "These are not actions for debt, but are actions to enforce a liability created by statute."

Third. The third possible theory is that the provision of the Bankruptcy Act permits filing of a claim for a debt, if the greater part of the foundation of it is contractual in its nature.

It seems to me that the majority opinion attaches over emphasis to the fact that the instant claim may be said in some aspects to partake of, or exhibit some of the characteristic elements of a contract.

The real question is not "does the instant claim in some particulars resemble a contract," but rather is the instant claim "founded upon a contract"? I am inclined to think that the statute requires that we look to the essence of a claim, rather than to an incident thereof, in order to determine whether or not it is "founded" upon contract.

I believe the language of the cases shows that the contractual incidents of the liability are only subordinate, and are lesser in extent to the portion of the foundation which is statutory.

In McClaine v. Rankin, supra, 197 U.S. 154, 162, 25 S.Ct. 410, 412, 49 L.Ed. 702, 3 Ann.Cas. 500, it is said that the liability is "enforceable only according to the Federal statute, independent of which the cause of action does not exist." And in Christopher v. Norvell, supra, 201 U.S. 216, 228, 26 S. Ct. 502, 506, 50 L.Ed. 732, 5 Ann.Cas. 740, it is said:

"Without the statute she could not be made liable individually for the debts of the bank at all. No implied obligation to contribute to the payment of such debts could arise from the single fact that she became and was a shareholder. Her liability for the debts of the bank is created by the statute, although in a limited sense there is an element of contract in her having become a shareholder; and the right of the

receiver to maintain this action depends upon, and has its sanction in, the statute creating liability against each shareholder, in whatever way he may have become such. There have been cases in which there appeared such elements of contract as were deemed sufficient, in particular circumstances, to support an action. [Citations.] But that fact does not justify the contention that an action upon an assessment by the Comptroller is not based upon the statute."

I believe this is sufficient to show that the greater part of the foundation of the liability is the statute "independent of which the cause of action does not exist." McClaine v. Rankin, supra, 197 U.S. 154, 162, 25 S.Ct. 410, 412, 49 L.Ed. 702, 3 Ann.Cas. 500. And that liability exists against a shareholder "in whatever way he may have become such" (Christopher v. Norvell, supra, 201 U.S. 216, 228, 26 S.Ct. 502, 506, 50 L. Ed. 732, 5 Ann.Cas. 740); or in other words, the liability exists whether one becomes a shareholder by contract or in some other manner.

Prior to the enactment of the California statute in question, there existed in California a statute and constitutional provision imposing liability on corporate shareholders. In Coombes v. Getz, 285 U.S. 434, 52 S.Ct. 435, 76 L.Ed. 866, this liability was held contractual, because of California decisions so construing the provision. This court in Walker v. Woodside, 164 F. 680, 681, held that a claim for such liability was provable in bankruptcy. See, also, Shell Co. of California v. Dunn (C.C.A.9) 19 F.(2d) 318. These constitutional and statutory provisions were repealed.

It is now argued that the decisions construing the liability as contractual as it existed prior to repeal of the provisions mentioned established a state policy which is controlling in construing the new statute. The answer is that evidently the state wished to change its policy, for it copied a provision of the federal statutes creating a statutory liability. Both parties concede that the California statute before us is practically identical to the provision imposing liability on stockholders of a national bank, 12 U.S.C.A. § 64. Further, the Supreme Court of California has said so. Rainey v. Michel, 57 P.(2d) 932, 940, 941, 105 A.L.R. 148. Under such circumstances, the rule in California is as stated in Southern Pac. Co. v. Superior Court, 27 Cal. App. 240, 150 P. 397, 403, 404:

"But it is evident that the system of regulation of freights and fares provided in the Constitution and statutes of California, to which we have referred, has been modeled upon the federal act for the regulation of commerce between the states. This being so, it will be assumed that the people of California, in enacting the same or similar terms of their written law intended to express the same meaning as that established as the true meaning of the law from which these laws of the state have been derived."

See, also, People v. Norcross, 71 Cal. App. 2, 234 P. 438. This principle was approved by the Supreme Court of California in Union Oil Associates v. Johnson, 2 Cal.(2d) 727, 43 P.(2d) 291, 295, 98 A. L.R. 1499.

In view of this principle of law, the construction placed on some other statute is neither analogous nor important in the consideration of the present statute.

The claim for liability has been held not to be a provable claim by the Third Circuit, in Brown v. O'Keefe (C.C.A.) 85 F.(2d) 885, decided September 24, 1936. The majority opinion has, I think, misconstrued the effect of that decision. The material facts are identical. The stockholder was adjudicated a bankrupt. Thereafter an assessment was levied, and the stockholder received a discharge in bankruptcy. Suit was brought to recover the assessment. The first defense was that the bankrupt was not the owner of the stock but that the stock passed to the trustee upon the adjudication of the bankrupt. The majority opinion in the instant case says: "The court held that the discharge in bankruptcy did not prevent future assessments upon shares which had never passed to the trustee in bankruptcy." I am not in accord with this construction, for the opinion in Brown v. O'Keefe, supra, shows that the appellate court merely quoted the trial court, saying: "It is not necessary to discuss this defense as defendant in his brief consents, that it be stricken." The other defense was "that his discharge in bankruptcy was a bar" to the suit. The Third Circuit thereupon affirmed the judgment of the lower court (Slaughter v. Brown, 16 F.Supp. 494, 498), and approved the following language used by the trial court, that:

"The doctrine of the McClaine Case is controlling; that the obligation of the defendant did not arise out of contract, ex-

976

press or implied, but was in the nature of a statutory liability. * * *"

The same conclusion was reached in Anderson v. Akers (D.C.Ky.) 11 F.Supp. 9. See, also, Holman v. Clark (D.C.Mich.) 48 F.(2d) 253.

I conclude that the claim before us cannot be allowed against the bankrupt estate, and that "it is a liability created by the statute, because the statute is the foundation for the implied contract." Platt v. Wilmot, 193 U.S. 602, 613, 24 S.Ct. 542, 546, 48 L.Ed. 809.

In the stipulated facts, it is said that appellee took charge of the assets of the Bank of San Pedro for liquidation, prior to the bankruptcy of Sherer, which was on January 21, 1935. The precise date is not mentioned. In appellee's brief it is said that the bank "closed its doors in March, 1933, and remained in conservatorship under the State Bank Act (St.Cal.1909, p. 87, as amended) until December, 1934, at which time the Superintendent of Banks took possession for liquidation purposes." In the stipulated facts it is said that the bankrupt had been the owner of 2602 shares of the bank's stock "for many years prior" to the time when appellee took charge of the assets. It is thus indicated that the bank was incorporated prior to August 14, 1931, and that the bankrupt acquired his stock prior to that time. Under the doctrine of Rainey v. Michel, supra, the bankrupt is liable under the existing statute for "debts incurred subsequent to August 14, 1931," only. What I have heretofore stated regarding the claim of appellee, is applicable only to a claim as justified under the holding in Rainey v. Michel, supra.